EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* WILLIAM IRIZARRY y FÉLIX PELLICIER, acusados y apelantes.

Núm. 8204.—*Sometido:* Junio 20, 1940. *Resuelto:* Junio 28, 1940.

*Vicente Palés Matos,* abogado de los apelantes; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Los apelantes fueron denunciados por un delito de infracción de la sección 4 de la Ley núm. 25, de julio 17 de 1935 ((2) pág. 153), cometido de la manera siguiente:

"Que en 30 de julio de 1939, y en el pueblo de Cabo Rojo, P. R., dentro del Distrito Judicial Municipal de Cabo Rojo, P. R., que forma parte del Distrito Judicial de Mayagüez, P. R., los citados acusados, William Irizarry y Félix Pellicier, voluntaria y maliciosamente, en forma ilegal y a sabiendas explotaban el negocio y pusieron en circulación para la venta billetes, papeletas, boletos o números, por medio de agentes vendedores, el primero de los acusados, o sea el acusado William Irizarry, como dueño o director de la misma, y, el segundo de los acusados, o sea el acusado Félix Pellicier, como administrador de la misma, de una banca de la bolita o *boli-pool* denominada 'Ruiseñor', que es una lotería clandestina expresamente prohibida por la ley, la cual lotería dirigieron y administraron y tiraron y jugaron el día 30 de julio de 1939, los aquí acusados William Irizarry y Félix Pellicier, a sabiendas de que tales billetes, boletos, papeletas, o números se utilizan y se estaban utilizando entonces y allí en los juegos ilegales de la bolita o *boli-pool,* siendo el premio mayor .de $100 para aquella persona o personas que los compraran y tuvieran o corrieran la suerte o la aventura de obtener el referido premio si el número comprado por estas personas o persona salía agraciado en el orden de sus tres cifras y que concuerden con las últimas tres cifras del número agraciado con el premio mayor de la Lotería Nacional Dominicana, que en Puerto Rico es una lotería clandestina. . . ."

Los acusados formularon excepción perentoria por los dos motivos siguientes:

1. Que en la denuncia se imputa a los acusados la comisión de dos distintos delitos públicos, a saber:
    (*a*) Infracción de la sección 4 de la Ley núm. 25 de julio 17, 1935.
    (*b*) Infracción al artículo 291 del Código Penal.

2. Que la denuncia no se ajusta en su fondo a los requisitos de los artículos 71, 72 y 73 del Código de Enjuiciamiento Criminal de Puerto Rico.

Declarada sin lugar la excepción perentoria y visto el caso ante la Corte de Distrito de Mayagüez, ésta declaró a los acusados "culpables del delito de infracción Ley *Bolipool*" y les condenó a pagar una multa de $200, o, en su defecto, a sufrir cuatro meses de cárcel.

En el presente recurso se alega que la corte inferior incurrió en error: (1) al declarar sin lugar la excepción perentoria; y (2) al declarar a los acusados "culpables de infracción Ley *Bolipool*," en vez de declararles culpables de infracción de la Ley núm. 25 de julio 17 de 1935, especificando la sección infringida.

La sección 4 de la citada ley, que es la que se alega ha sido infringida por los acusados, en lo que es pertinente lee así:

"Sección 4.—Toda persona que fuere sorprendida portando o conduciendo cualquier papeleta, billete, *ticket,* libreta, lista de números o implementos, a sabiendas de que se utilizan o están utilizando para los juegos ilegales de la 'bolita,' *boli-pool,*' combinaciones clandestinas relacionadas con los *'pools'* de los hipódromos de Puerto Rico, y *loterías clandestinas,* y toda persona que *vendiere* éstos o cualesquiera otros análogos que se probare representar algún billete, suerte, acción o interés en dichos juegos ilícitos o conectados con la práctica de los mismos, será arrestada inmediatamente, . . . .; y todo dueño, apoderado, agente, encargado, director o *administrador* de los juegos prohibidos por esta Ley, convicto que fuere, podrá ser castigado a pagar una multa no menor de cien (100) dólares ni mayor de doscientos (200) dólares, o a sufrir cárcel por un término no menor de sesenta (60) días ni mayor de cuatro (4) meses; . . ."

El artículo 291 del Código Penal lee como sigue:

"Artículo 291.—Se entiende por lotería para los efectos de este código, cualquier plan para la disposición o distribución de dinero o bienes por suerte, entre personas que hayan pagado o prometido pagar cualquier precio o compensación por correr la aventura de

obtener dichos objetos o parte de ellos, o cualquiera acción o interés en los mismos, en virtud de algún acuerdo, inteligencia, o esperanza de que habrán de distribuirse por suerte, llámese lotería, rifa, empresa de regalos o por cualquier otro nombre.''

Como se ve, la sección 4, supra, prohibe y castiga: (*a*) la portación de billetes, *tickets* o boletos a sabiendas de ·que se usan para los juegos ilícitos denominados ''bolita,'' ''*boli-pool*,'' ''combinaciones clandestinas relacionadas con los *pools* de los hipódromos'' y ''loterías clandestinas''; (*b*) la venta de billetes, *tickets* o boletos representativos de alguna acción o interés en los mencionados juegos ilícitos; y (*c*) ser dueño, apoderado, agente, encargado, director o administrador de cualesquiera de dichos juegos prohibidos.

En la denuncia en el caso de autos se acusa a Irizarry de ser dueño o director y a Pellicier de ser administrador ''de una banca de bolita o *boli-pool* denominada 'Ruiseñor,' que es una lotería clandestina expresamente prohibida por la ley''; y los acusa a ambos de haber puesto en circulación para la venta billetes, papeletas, boletos o números de dicha lotería clandestina. En la denuncia se describe detalladamente el plan, procedimiento o *modus operandi* de los acusados para determinar cuál había de ser la persona con **derecho a recibir el premio ofrecido.** Se utilizaba para ese fin la instrumentalidad que para su sorteo semanal utiliza la Lotería Nacional Dominicana. Los hechos expuestos en la denuncia son más que suficientes para informar a los acusados de que el único delito que se les imputa es el de ser dueño uno de ellos y administrador el otro de una lotería clandestina y haber puesto en circulación y venta billetes de esa lotería. Véase: *El Pueblo* v. *Cintrón,* 52 D.P.R. 334.

No es exacta la alegación del apelante de que en la denuncia se le acusa: (1) de ser dueños y administradores de la bolita o *boli-pool* denominada ''Ruiseñor,'' y (2) de tener una lotería clandestina. Las palabras exactas de la denuncia son:

''. . . el primero de los acusados, William Irizarry, como dueño o director de la misma, y, el segundo de los acusados, o sea el acusado Félix Pellicier, como administrador de la misma, *de una banca de bolita o boli-pool denominada 'Ruiseñor,' que es una lotería clandestina expresamente prohibida por la ley.* . . .

Arguyen los apelantes que la denuncia contra ellos formulada ''es una descripción minuciosa y detallada de una 'lotería' (artículo 291 del Código Penal) ya que todos y cada uno de los elementos integrantes de este delito están incorporados a la denuncia''; y que los hechos denunciados no pueden ser castigados como infracción de la sección 4 de la Ley núm. 25 de 1935, supra, porque no es en dicha ley y sí en los artículos 291 y 292 del Código Penal donde se define y castiga el juego ilícito de lotería.

Es cierto que la citada Ley núm. 25 de 1935 no contiene una definición de lo que se entiende por ''loterías clandestinas.'' Tampoco define dicha ley lo que se entiende por ''bolita,'' *''boli-pool''* y ''combinaciones clandestinas relacionadas con los *pools* de los hipódromos de Puerto Rico.'' En su sección 1 declara estorbo público los juegos ''conocidos generalmente'' por los indicados nombres. Veamos, pues, qué es lo que se conoce generalmente como ''lotería clandestina.''

Lotería.—Genéricamente, juego a modo de rifa, de dinero u objetos varios. . . .

Considerada jurídicamente, la lotería es un juego de azar que cae bajo la sanción del Código Penal . Enciclopedia Jurídica Española, vol. 21, pág. 483.

Lotería.—Especie de rifa que se hace con mercaderías, billetes dinero y otras cosas con autoridad pública. Juego público en que se premian con diversas cantidades varios billetes sacados a la suerte entre un gran número de ellos que se ponen en venta. Diccionario de la Lengua Española (1936), pág. 787.

Clandestino, na. (Del lat. *clandestinus*, de *clam*, en secreto encubiertamente.) Adj. Secreto, oculto. Aplícase generalmente a lo que se hace o se dice secretamente por temor a la ley o para eludirla. Diccionario de la Lengua Española (1936), pág. 300.

Convenimos con los apelantes en que el juego ilícito que se describe en la denuncia es el que se conoce generalmente como "lotería clandestina" y que los acusados pudieron haber sido procesados por una infracción del artículo 291 del Código Penal. La denuncia contiene todos los elementos esenciales del delito: suerte o azar, consideración y premio. Véanse: *El Pueblo* v. *Swiggett,* 37 D.P.R. 911, y *El Pueblo* v. *Torres,* 40 D.P.R. 252.

A nuestro juicio, todos los juegos específicamente prohibidos y castigados por la sección 4 de la Ley núm. 25 de 1935, pueden ser perseguidos y castigados, a opción del fiscal, de acuerdo con dicha ley o bajo el artículo 291 del Código Penal, siempre que se trate de un plan mediante el cual se distribuya dinero o bienes, por suerte, entre las personas que hayan comprado números o billetes para el sorteo, en la inteligencia de que los premios habrán de ser adjudicados por suerte. No importa el nombre que se le dé al plan o juego prohibido. Si en el mismo concurren los elementos "suerte," "consideración" y "premio," el plan cae dentro de la prohibición del citado artículo del Código Penal.

Para que el plan o juego de lotería pueda ser considerado como una infracción del artículo 291 del Código Penal, no es necesario que el sorteo de los premios se realice utilizando el sorteo de alguna lotería legalmente establecida en la Isla o en algún otro sitio en el exterior o que se siga un plan o sistema determinado para la adjudicación de los premios. Así, en *El Pueblo* v. *Martínez,* 23 D.P.R. 228, en el que se alegaba que el acusado organizó un plan para la distribución de dinero por suerte entre aquellas personas que jugaban y se comprometían a pagar 10 centavos por cada acción, con la esperanza de recibir un premio de $700, todo lo cual dependía de ciertas carreras que habían de celebrarse en el hipódromo de San Juan, se resolvió que la denuncia imputaba un delito de acuerdo con los artículos 291 y 292 del Código Penal. Y en *El Pueblo* v. *Torres,* supra, se sostuvo que una denuncia cuyo lenguaje imputa substancialmente al

acusado la realización, por medio de una máquina automática *(slot machine),* de transacciones en las cuales juegan papel principal los elementos de .azar, consideración y premio, alega suficientemente el delito castigado por el artículo 291 del Código Penal. Y a idéntica conclusión se llegó en *El Pueblo* v. *Rodríguez,* 43 D.P.R. 11.

No erró la corte inferior al resolver que la denuncia es válida y suficiente.

El segundo señalamiento carece de importancia. La cuestión que en el mismo se levanta fué considerada y resuelta en sentido adverso a los apelantes en *El Pueblo* v. *Cruz,* 53 D.P.R. 531. El error cometido no es perjudicial y puede ser subsanado modificando la sentencia apelada para que en la parte pertinente lea así:

"Practicada la prueba de ambas partes, la corte es de opinión que la ley y los hechos están en contra de los acusados, a los que declara culpables del delito de infracción a la sección 4 de la Ley núm. 25 de julio 17 de 1935, y condena a cada uno de ellos a pagar una multa de $200 o en su defecto a sufrir la pena de cuatro meses de cárcel, y además al pago de las costas. Se les abonará el tiempo que hayan estado presos preventivamente."

*Y así modificada, se confirma.*