EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* TIMOTEO BÁEZ FUENTES, conocido por JOSÉ GAMALIER BÁEZ, acusado y apelante.

Núm. 11815.—*Sometido:* Marzo 13, 1947. *Resuelto:* Mayo 5, 1947.

_____

*F. Hernández Vargas,* abogado del apelante; *Hon. Procurador General Interino Luis Negrón Fernández, y Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El acusado apela de una sentencia de reclusión perpetua después 'de haberlo declarado un jurado culpable de asesinato en primer grado.

■■ Se queja primeramente el acusado de que el juez de distrito declaró sin lugar su moción para someter a tres peritos la cuestión de la locura del apelante en dicho momento, a tenor con el artículo 440 del Código de Enjuiciamiento Criminal. Sin embargo, esto sólo es necesario cuando surge en la mente del juez sentenciador alguna duda sustancial en cuanto a la locura del acusado. Una moción de esta índole va dirigida a la discreción de la corte inferior. Solamente cuando la corte de distrito abusa de su discreción es que estamos justificados en intervenir con su resolución. *People* v. *Fountain,* 170 Cal. 460, 467 (1915); *People* v. *Loomis,* 170 Cal. 347 (1915); *People* v. *Hettick,* 126 Cal. 425 (1899); *People* v. *Keyes,* 178 Cal. 794 (1918); *Pueblo* v. *Vi-*

*llarrubia,* 54 D.P.R. 346; *Pueblo* v. *Nazario,* 53 D.P.R. 239; *Iturrino* v. *Corte,* 50 D.P.R. 934.

■ Nada encontramos en el récord que nos obligue a decir que la corte inferior tenía que seguir en este caso el procedimiento provisto por el artículo 440. En apoyo de su contención, el acusado presentó una declaración jurada preliminar de una trabajadora social en relación con el historial social y clínico del acusado. Esta trabajadora social ni siquiera había visto al acusado. Si bien los hechos expuestos en su declaración jurada quizá habrían justificado la actuación de la corte a tenor con el artículo 440, no podemos decir que fué un abuso de discreción el negarse a hacer tal cosa a base de su declaración jurada. La única otra prueba presentada por el acusado sobre esta cuestión fueron dos declaraciones juradas de dos especialistas, en cuanto a que necesitarían treinta días para poder hacer un examen mental al acusado. Cuando el caso fué llamado a juicio y el acusado renovó su moción, la corte inferior a iniciativa propia oyó los testigos del Fiscal para determinar si debía invocarse el artículo 440. Sus declaraciones no convencieron a la corte de que esta acción debía tomarse, y nada encontramos en dichas declaraciones que nos exija resolver lo contrario.

■ El acusado señala como su segundo error la negativa de la corte de distrito a permitirle a la trabajadora social contestar la siguiente pregunta: "¿De acuerdo con las observaciones que usted hizo de este acusado cuando lo entrevistó y de acuerdo con esa información que usted como trabajadora social recibió de la familia de este acusado, usted llegó a alguna conclusión en cuanto al móvil de este caso?"

El acusado trataba, probando la ausencia del móvil, de establecer como defensa la locura cuando cometió el delito. La corte fué liberal al permitirle a la trabajadora social, quien no tenía preparación médica, declarar ampliamente en cuanto al historial del acusado y expresar su opinión en cuanto a que éste no podía distinguir entre el bien y el mal.

Pero tocaba al jurado y no a la testigo, determinar la cuestión del móvil que tuvo el acusado bajo las circunstancias de este caso. *Cf. El Pueblo* v. *Valle,* 29 D.P.R. 555; *Wiggins* v. *State,* 27 S.W.2d 236 (Texas, 1930); VII Wigmore *on Evidence,* secciones 1963-4 (3ra. ed.). La corte inferior no cometió error al no permitir esta pregunta.

En su tercer error el acusado se queja de la actuación de la corte inferior al permitirle al Dr. Julio R. Rolenson declarar que, basado en un examen del acusado y habiendo observado a éste en la cárcel de distrito, el acusado estaba mentalmente normal y podía distinguir entre el bien y el mal. La declaración del Dr. Rolenson fué presentada por el Pueblo en *rebuttal,* después que el abogado del acusado había presentado prueba de que éste estaba loco.

El Dr. Rolenson declaró que es graduado de un colegio de medicina; que ha ejercido su profesión médica durante 25 años; que es el médico de la cárcel de distrito de San Juan; que hace un examen físico y mental de todos los confinados y les da tratamiento; que estudió psiquiatría en el colegio como asignatura; que nunca ha ejercido en psiquiatría, sino en medicina general.

La capacidad del Dr. Rolenson para expresar su opinión en cuanto a la condición mental del acusado bajo estas circunstancias, era cuestión que competía a la discreción de la corte de distrito. Véanse 54 A.L.R. 860, 863; *Bell* v. *Acacia Mut. Life Ins. Co.,* 16 So.2d 821 (La., 1944). No podemos decir que la corte inferior abusó de su discreción, especialmente cuando ya había permitido al acusado presentar prueba similar por la trabajadora social.

El cuarto error señalado es que el veredicto es contrario a derecho y a la prueba. El acusado, un muchacho de 18 años, dió muerte a una señora, vecina suya, cercenándole la cabeza con un machete. Alegó ser inocente debido a estar loco, y presentó prueba en apoyo de su alegación. La corte inferior sometió al jurado, con las debidas instrucciones, la cuestión de locura. *Cf. Fisher* v. *United States,*

—U.S.—,90 L. ed. 1078.   Al declarar culpable al acusado de asesinato en primer grado, el jurado resolvió que el apelante estaba cuerdo cuando cometió el delito.   Nada encontramos en el récord que justifique que alteremos el veredicto.

*La sentencia de la corte de distrito será confirmada.*

El Juez Asociado Sr. Marrero no intervino.