EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO GARCÍA DÁVILA, acusado y apelante.

*Número:* CR-62-13     *Resuelto:* 15 de noviembre de 1962

*Benjamín Ortiz,* abogado del apelante; *J. B. Fernández Badillo, Procurador General, y Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM: El apelante fue acusado de homicidio involuntario. El jurado en el Tribunal Superior, Sala de San Juan, lo encontró culpable y el juez sentenciador le impuso una pena de un año de cárcel. Contra tal sentencia ha apelado, señalando la comisión de dos errores.

Veamos los hechos. El día 2 de agosto de 1959 el acusado, en compañía de siete personas más, conducía una camioneta "pick-up" por la Avenida Norte en dirección hacia Santurce. Mientras pasaba frente al Caserío Lloréns Torres el vehículo tropezó contra la isla que hay en medio de la avenida y se volcó. En el accidente perdió la vida la menor Olga de Jesús

Vázquez que viajaba en el vehículo. Los demás pasajeros resultaron golpeados y algunos perdieron el conocimiento.

I—Alega el apelante error al formular el juez sentenciador ciertas preguntas y observaciones a los testigos en presencia del jurado, indicando así indirectamente su opinión respecto a la credibilidad de los testigos y al valor de su testimonio.

Al declarar la testigo de cargo Hilda Guzmán García el fiscal produjo una declaración jurada prestada por ella ante el fiscal Ismael Betancourt Lebrón. Del récord se infiere que dicha declaración contenía partes contrarias a lo declarado por la testigo en corte. Se suscitó el siguiente diálogo:

"HON. FISCAL:

¿Lo que esa guagua hizo fue echarse para la derecha para darle paso?

TESTIGO:

R. Sí, señor.

HON. FISCAL:

¿Eso le declaró al señor fiscal Betancourt?

TESTIGO:

R. Sí, señor.

HON. FISCAL:

¿El día 20 de agosto de 1959?

TESTIGO:

R. Sí, señor.

HON. FISCAL:

Como yo iba mirando hacia atrás vi venir un carro colorado que cuando se acercaba bastante la guagua corría lo dejaba atrás. ¿Y el carro lo dejaba atrás?

TESTIGO:

R. Esa es la verdad.

HON. JUEZ:

La pregunta es: ¿Si ésa es la verdad? Porque ahora dice una cosa y después dice otra.

HON. FISCAL:

Yo le pregunto señorita: ¿Cuál es la verdad, lo que usted le dice al fiscal Betancourt, o lo que está declarando aquí?

TESTIGO:

R. Yo estoy declarando la verdad, lo del carro azul.

HON. JUEZ:

Eso no es verdad lo que se le está preguntando. Lo que se le está preguntando hoy aquí en Sala es: Que venía mirando hacia atrás y vio venir un carro rojo y un carro azul y que al irle a pasarle al carro rojo, la guagua se echó para el lado del carro. Mientras usted si, declaró que el carro rojo pasaba y que el señor corría y el que guía la guagua corría más. ¿Cuál es la verdad?

TESTIGO:

R. La verdad es eso ahora, la verdad es lo del carro colorado.

HON. FISCAL:

¿Cuál es la verdad, que venía regateando?

TESTIGO:

R. No es eso.

HON. FISCAL:

¿Cuál es la verdad, entonces?

TESTIGO:

R. Que venía corriendo y el carro se quedaba bien atrás. Yo se lo expliqué bien al señor Betancourt."

Y más adelante:

"HON. JUEZ:

¿Cuál es la verdad se le está preguntando?

TESTIGO:

R. La verdad es ésta.

HON. JUEZ:

Ahora puede explicar.

HON. FISCAL:

La verdad es esta declaración jurada.

TESTIGO:

R. Bueno . . .

DEFENSA:

No la dejan hablar a ella.

HON. JUEZ:

Sin comentario. Señora conteste. La verdad es lo que usted dice allí en cuanto a velocidad en esa declaración?

TESTIGO:

R. Permítame.

HON. JUEZ:

¿Que si la verdad es ésa?

TESTIGO:

    R. Bueno . . .

DEFENSA:

    Sr. Juez, anotamos una excepción. Además del tono enfático Sr. Juez y del gesto.

HON. JUEZ:

    Ahora tiene derecho. ¿Qué quiere explicar?" ■

Atendida la totalidad de las circunstancias no creemos que la actuación del juez en este caso constituya error perjudicial. En numerosas ocasiones se ha sostenido el derecho del juez a interrogar a los testigos, particularmente cuando el testimonio ofrecido por éstos no es claro. *Jordan* v. *U.S.* 295 F.2d 355 (10º cir. 1961) *cert. denied* 82 S. Ct. 479 (1962); *State* v. *Strickland,* 119 S.E.2d 781 (N.C. 1961); *People* v. *Wesley,* 163 N.E.2d 500 (Ill. 1959); *People* v. *Rigney,* 359 P.2d 23 (Calif. 1961).

En *United States* v. *Hawkins,* 295 F.2d 837, (6º cir. 1961), a la página 840, se dijo: "[c]ada caso debe, claro está, depender de sus propios hechos específicos y de la evaluación que se haga de la prueba. El derecho del juez sentenciador a comentar sobre la evidencia incluye, necesariamente, el derecho a comentar desfavorablemente, siempre que al comentar no se parcialice y que se haga claro al jurado que, irrespectivamente del comentario, la determinación final de los hechos compete al jurado". Véase además *United States* v. *Kravitz,* 281 F.2d 581 (3er. cir. 1960). ■

En la transcripción de la evidencia radicada no aparecen las instrucciones que el juez que presidió la vista del caso transmitió al jurado. Tenemos que presumir que éste transmitió instrucciones que se ajustan a derecho y que en éstas tenía que estar incluida aquélla que les informa al jurado que ellos son los únicos jueces de hecho y que son los que tienen la responsabilidad de dirimir cualquier conflicto que surja de la prueba.

La situación aquí es muy similar a la que vimos en *Pueblo* v. *Salas,* 60 D.P.R. 692 (1942). Allí también la acusación

y convicción eran por homicidio involuntario. En esa ocasión dijimos: "[e]l hecho de que el juez advirtiese al testigo de su deber de decir la verdad no demuestra que tuviera prejuicio alguno contra el acusado. De los autos se desprende que el testigo había declarado en la investigación preliminar en sentido contrario al en que entonces trataba de hacerlo y siendo incompatible una declaración con la otra era propio que el juez le recordase su deber de decir la verdad". Véase además *Pueblo* v. *Aletriz*, 85 D.P.R. 646 (1962) ; *Pueblo* v. *Sanjurjo*, 73 D.P.R. 574 (1952) ; *Pueblo* v. *Bartolomei*, 70 D.P.R. 698 (1949) ; *Pueblo* v. *Rodríguez*, 65 D.P.R. 530 (1946) ; *Pueblo* v. *Rodríguez*, 62 D.P.R. 252 (1943) ; *Pueblo* v. *León*, 53 D.P.R. 429 (1938) y *Pueblo* v. *Acevedo*, 35 D.P.R. 966 (1926).

El error no fue cometido. ■

II—Alega el apelante que el veredicto fue contrario a la prueba. Sostiene que la acusación está fundada en que el acusado conducía el vehículo a velocidad excesiva, y la prueba no estableció esa circunstancia. En su parte pertinente la acusación le informaba que "sin guardar la debida prudencia, cuidado y circunspección, conduciéndolo a una velocidad exagerada lo hizo con tal negligencia y descuido que dicho vehículo de motor se volcó cayendo seis ocupantes al pavimento, entre los cuales se encontraba el ser humano Olga de Jesús Vázquez, quien sufrió golpes de carácter grave que le ocasionaron la muerte".

Como hemos visto la denuncia le informa al acusado que conducía el vehículo a velocidad exagerada, pero además le dice que lo conducía "con tal negligencia y descuido que dicho vehículo de motor se volcó". Y la evidencia presentada demuestra que el automóvil iba ligero, "volando por la carretera" (T. de E. pág. 33) ; "estaba regateando" (T. de E. pág. 34) ; "Unas veces Pedro [el acusado] le pasaba, otras veces le pasaba el carro; se igualaron unas veces, entonces le pasaba, y otras veces el carro"; y así estuvieron "como diez o quince

484

minutos" (T. de E. pág. 28) ; y que "empezó a dar zig-zags" (T. de E. pág. 35). Se afirmó además que el vehículo "corrió cien pies" antes de volcarse (T. de E. pág. 71). De toda la prueba surge claramente la falta de cuidado del conductor además de que conducía a velocidad exagerada.

*Se confirmará la sentencia apelada.*